### BIRMINGHAM PARK IMPROVEMENT ASSOCIATION v. ROSSO.

1. DEDICATION—SUBDIVISION LOTS—VILLAGE PARK—ACCEPTANCE.

Option agreement by subdivision owners who had theretofore deeded lots by deeds containing provision that 2 certain lots were to "be used strictly for park and recreation purposes," which agreement itself provided that such 2 lots and others therein specified were to be used as a public park and which was incorporated in an ordinance that was submitted to and approved by the village electors, effected a dedication to the public for park purposes, not a limitation for the benefit merely of the owners of property within the subdivision, since the village exercised its rights under the option subject to the conditions imposed and the approval by the electors constituted an unequivocal acceptance.

2. MUNICIPAL CORPORATIONS—CONTRACTS FOR RIGHTS-OF-WAY—CONVEYANCE OF VILLAGE PARK PROPERTY.

Village commission resolution which authorized the president and clerk "to execute contracts" with property owners for rights-of-way for sewers did not thereby authorize them to convey to party from whom village purchased a release of right-of-way for trunk-line sewer a private easement of passage over 50 feet of land dedicated to, and accepted by, the village for park purposes.

3. INJUNCTION—LACHES—ESTOPPEL—EVIDENCE.

Plaintiff assignees of subdivider who had conveyed 2 lots to village for park purposes were neither guilty of laches nor estopped from seeking injunction against city successor and private individuals who had obtained a conveyance of a per-

---

REFERENCES FOR POINTS IN HEADNOTES

[1] 16 Am Jur, Dedication § 21.
[3] 28 Am Jur, Injunctions §§ 61, 66.
[4] 28 Am Jur, Injunctions § 23.
[5] 14 Am Jur, Covenants, Conditions and Restrictions § 339.
[6] 3 Am Jur, Appeal and Error § 245.

petual right-af-way over 50 feet of property dedicated to village for park purposes, where deed of such right-of-way, given in 1923, was not recorded until 1941, present owners started construction on adjoining land and making use of the 50-foot easement in 1951 and suit was commenced in July, 1951.

4. SAME—EQUITY.
   Injunction against use of 50-foot strip along edge of public park property, dedicated to, and accepted by, village for park purposes by subdivider, plaintiffs' assignor, would not be denied because of prejudice resulting to individual defendants because of their inability to use their adjoining property for construction of residences.

5. COVENANTS—NEGATIVE EASEMENT—DAMAGES.
   The owners of a negative easement are entitled to enforce such rights, notwithstanding inability to show consequential damages.

6. APPEAL AND ERROR—QUESTIONS REVIEWABLE—WAY OF NECESSITY.
   Claim that right-of-way over park property, which defendant grantors had obtained from village in consideration for granting easement for sewer, was a way of necessity *held*, not subject to consideration on appeal, where the matter was not raised in the trial court.

Appeal from Oakland; Hartrick (George B.), J. Submitted January 9, 1959. (Docket No. 39, Calendar No. 46,147.) Decided April 14, 1959.

Bill by Birmingham Park Improvement Association, a Michigan corporation, and certain property owners against John H. Rosso, Beryl M. Rosso and the City of Birmingham, a municipal corporation, to enjoin use of land as right-of-way and to restrict its use to park purposes. Decree for plaintiffs. Defendants Rosso appeal. Affirmed.

*Henry R. Bishop,* for plaintiffs.

*Patterson & Patterson and Barrett,* for defendants Rosso.

CARR, J. This case involves the right of defendants Rosso to a claimed easement across certain property belonging to the defendant city of Birmingham. The material facts involved are not in dispute. In June, 1920, a corporation known as the H. and M. Land Company, being the owner of land located in Bloomfield township and the then village of Birmingham, caused to be recorded a plat thereof designated as Birmingham Park Allotment. The present controversy is concerned with lot 109 of said subdivision.

The plat did not impose restrictions on the lots but by subsequent written agreement dated July 27, 1920, between the H. and M. Land Company and the contract purchaser of a lot, said parties being the owners of the subdivision, it was provided that all lots, excepting 109, 110 and 111, should be restricted as to use to residential purposes. It was further provided that:

"Lots 109 and 111 shall be used for strictly park and recreation purposes and lot 110 shall be used for the benefit of the lot owners in said subdivision and shall be deeded to the Association to be formed as set forth herein."

It was also specified that the agreements, conditions and restrictions set forth in the undertaking should constitute an easement and servitude upon the premises and every part thereof, and that they should run with the land. In 1925, in accordance with the agreement as to restrictions, the H. and M. Land Company assigned its rights, powers, duties and obligations, to the plaintiff Birmingham Park Improvement Association.

Under date of October 28, 1921, by further agreement between the H. and M. Land Company and others having interests in certain lots in the subdivision, the restrictions and conditions provided for in the agreement of July 27, 1920, were modified

so as to release therefrom lots 23 to 40, inclusive, and also lot 110 of Birmingham Park Allotment. No mention was made of lot 109. Such release was followed by the giving of an option, on November 21, 1921, by the H. and M. Land Company to the village of Birmingham to purchase for the sum of $10,000 a part of lot 23, all of lots 24 to 40 inclusive, and lots 109, 110 and 111, of the subdivision according to the plat as recorded. It was specified in said option that the property to be conveyed, if the option was exercised, should be used for the purposes of a sewerage-disposal plant, subject to the exception, however, that lots 23, 24, 25, 39, 40, 109 and 111, should be restricted for use as a public park and as an extension of the village park system, and that no part of the disposal plant should be constructed thereon above the level of the surrounding ground. Said option contained further provisions contemplating the connection of the sewer system of Birmingham Park Allotment to the disposal plant when constructed, the furnishing of water to the subdivision, the execution of a warranty deed to the property, and the submission of the question of purchasing the property in question to a vote of the electors of the village.

The option as given to the village by the H. and M. Land Company was incorporated in an ordinance of said village by the commission thereof, and duly submitted to the electors on the 11th of January, 1922. It was approved by a vote of 419 to 217. On March 15th thereafter an agreement between the village, designated as the party of the second part, and the H. and M. Land Company was executed, setting forth the provisions of the option, the adoption of the ordinance, and the action of the electors thereon. Following such recitals the following provision was incorporated in the agreement:

"Now therefore in consideration of the foregoing and in consideration of warranty deed to the above described property this day executed by the party of the first part and delivered to the party of the second part, the party of the second part agrees that it will carry out all the terms, provisions, conditions and agreements in said option set forth to be performed by the party of the second part."

Defendants Rosso are the owners of lot 12 of Assessor's Plat No. 12 in the city of Birmingham. The record discloses that the plat was executed and approved in August, 1929. Defendants' grantor, Sarah A. Peugeot, acquired the property now owned by appellants in November, 1908. As a part of the plans of the village for the construction of a sewerage-disposal system it became necessary to obtain rights-of-way through the property of Sarah A. Peugeot, and of others, for a sewer. To that end the village commission adopted a resolution authorizing the president and clerk of the village "to execute contracts" with said property owners for rights-of-way, and to agree to reimbursement for damages sustained. Said resolution was apparently adopted on the 26th of February, 1923, and by memorandum of agreement bearing the same date Sarah A. Peugeot granted to the village a perpetual easement and right-of-way across her land in accordance with an attached blueprint. It was provided that the property through which the trunk-line sewer passed should be free from special assessments by reason of the installation of the sewer, and that the grantor of the easement should have the right to tap the said sewer. The village through its president and clerk further undertook to grant a right-of-way over village property, as follows:

"A perpetual right-of-way is hereby granted to second party by first party in, through and over the following described lands, to-wit: the south-

westerly 50 feet of lot #109 Birmingham Park Allotment, Oakland county, Michigan, from property of second party to Hawthorne road."

Defendants Rosso, as grantees of Sarah A. Peugeot and present owners of lot 12 of Assessor's Plat No. 12, based their claim to a right-of-way on the above-quoted provision of the agreement by which the village of Birmingham acquired an easement for the trunk-line sewer subsequently constructed. The individual plaintiffs in the present suit are owners of lots in Birmingham Park Allotment, and the corporate plaintiff, as above noted, asserts its right to join in the action for injunctive relief by virtue of the assignment to it by the H. and M. Land Company. It is their claim that under the facts as above set forth lot 109 became, and now is, a public park of the city of Birmingham, the successor to the former village, that the owners thereof duly made formal offer of dedication of the property for such purpose, that the village accepted the dedication and participated therein, and that under the restricted use of said lot the attempted grant of a right-of-way over and across the southwestern 50 feet thereof was ineffective to convey to Sarah A. Peugeot, under whom defendants Russo claim, a private right-of-way. It is also claimed that the president and the clerk of the village were without authority to grant any such right on behalf of the village. The trial court determined the issues involved in favor of the plaintiffs, and defendants Rosso have appealed.

The intention of the owners of Birmingham Park Allotment to subject lot 109 to a restriction limiting its use for park purposes clearly appears. Appellants contend, however, that when the conveyance to the village was executed the restriction was terminated. It is argued in substance that lot 109 was de-

signed to be a private park only, and attention is called to the specific language of the restriction agreement, hereinbefore quoted. We are not in accord with such interpretation of the language used. It will be noted that lots 109 and 111 were specified for use "for strictly park and recreation purposes," while as to lot 110 it was obviously the intention of the parties to the agreement that it should be used for the benefit of lot owners in the subdivision, and in furtherance of such purpose should be deeded to the association that the parties contemplated would subsequently be formed. If it had been intended that lot 109 should be likewise for the sole benefit of lot owners appropriate language to indicate such intent would doubtless have been used. The variance in the terms employed with reference to lots 109 and 111, as compared with the provision relating to lot 110, is significant. We are in accord with the conclusion of the trial judge that insofar as lot 109 was concerned the purpose of the agreement was a dedication to the public for park purposes, and not a limitation for the benefit merely of the owners of property within the subdivision.

It is further argued that the provision of the option given to the village, incorporated in the subsequent agreement between the H. and M. Land Company and the municipality, that lot 109 (and other lots) should be "restricted for use as a public park and as an extension of the village park system" was merely a declaration of purpose, and that the village commission, in consequence, was empowered to grant the private right-of-way now in dispute. Plaintiffs rely in support of their claim on *Briggs* v. *City of Grand Rapids,* 261 Mich 11. However, the facts in the *Briggs Case* were materially different from those in the instant controversy. There the instrument of conveyance contained the words, following the description of the property, "This pur-

chase of land is for park purposes." Suit was brought to cancel the deed because of the action of the city of Grand Rapids in conveying a portion of the property to the board of education of the city for use as a football field. The question of making such conveyance for the purpose indicated was submitted to the electors of the city by whom it was approved, more than 3/5 of the votes cast being in favor of such action. In denying the relief sought, this Court pointed out in its opinion that (p 14):

"There appears to be no intention in the language of the deed to limit the grantee in any way."

Obviously we have a different situation in the case at bar. Here the owners of the subdivision by their action declared that lot 109, and other property in the subdivision, should be dedicated to the public for park purposes. The option to the village was conditioned on the recognition of said dedication. The village exercised its rights under the option subject to the conditions imposed.

The option was incorporated in the ordinance which was submitted to the electors for approval. Such action constituted an unequivocal acceptance of the dedication. We think the circuit judge fairly summarized the situation in this respect in the statement in his opinion that:

"The restrictions imposed by the subdivider and the subsequent purchase by the municipality subject to the restrictions imposed, together with its acknowledged intention to carry out the conditions, has the force of dedication."

Other cases cited by counsel for appellants, including *Baldwin Manor, Inc.,* v. *City of Birmingham,* 341 Mich 423, are not in point, or may be distinguished on the basis of facts involved.

It may be noted also in passing that the president and clerk of the village were not authorized

by the action of the village commission, above mentioned, to execute conveyances of property belonging to the village in return for releases of rights-of-way for the trunk-line sewer. The resolution obviously contemplated agreements for the acquisition of the necessary rights-of-way and the payment for damages that might be sustained by any landowner. The authority given did not extend to the granting of private rights in the municipal park or in any portion thereof.

The further claim is advanced by appellants that the use of the right-of-way claimed by them does not constitute a material breach of the restrictions on the use of lot 109, and that, in consequence, the injunctive relief sought by plaintiffs should be denied. Counsel cite and rely on *Dodge* v. *North End Improvement Association,* 189 Mich 16 (Ann Cas 1918E, 485). There the defendant association sought and obtained permission from the city commission of Port Huron to construct a pavilion on park property. Plaintiff sought to enjoin the proposed construction on the ground that it violated his private rights as an owner of premises in proximity to the park in question. It was the claim of the defendant that the proposed structure would promote the public convenience, safety and pleasure, and facilitate the use of the park in that it would afford a waiting room and public shelter. The court came to the conclusion that the use to be made of the building was actually a public use and not foreign to that of a public park. In view of such conclusion a decree in favor of defendants was affirmed. In the case at bar it does not appear that the private right-of-way claimed by appellants would in any way benefit the public or enhance the use of lot 109 for park purposes. The exercise of the private rights asserted could scarcely have any such result. Other decisions to which attention has been called holding that the specific uses

involved were not at variance with park purposes do not require discussion.

The instrument undertaking to convey to appellants' grantor the private right-of-way here in dispute was not recorded until 1941, when defendants Rosso purchased their lot. On behalf of plaintiffs it is contended that they had no notice or knowledge that said defendants claimed a right-of-way over lot 109 until the summer of 1951 when defendants, in preparation for the construction of a building on their property, began to make material use of the claimed way. Discussions followed, defendant John H. Rosso apparently making it clear that he intended to continue his use and to construct at least 3 residences on lot 12. The present suit was instituted July 23, 1951. It does not appear that there was any delay in bringing the action after plaintiffs had actual knowledge of the situation.

In support of a claim of laches it is insisted that plaintiffs were charged with notice of the proceedings of the village commission with reference to the acquiring of the property and the authorization given to the president and clerk of the village to execute contracts with property owners, including Sarah A. Peugeot, for rights-of-way for the trunk-line sewer. However, there was nothing in the resolution of the village commission that can be said to have constituted notice to anyone that the president and clerk would undertake to convey, in any contract executed by them, any rights in the municipal park. Rather, the authority of said officers was to make agreements for the payment of damages incident to releases that they might procure. Plaintiffs were not required to search the records of the village to discover whether or not there had been compliance with the authority granted by the commission's resolution.

It does not appear that appellants' grantor undertook at any time to use the right-of-way now claimed, or that such casual use as defendants Rosso may have made thereof, prior to the summer of 1951, was of such character as to indicate a claim of right on their part. There was nothing in the situation necessitating action on the part of the plaintiffs until immediately prior to the institution of the present suit. Under the circumstances here involved, the claim of laches is not tenable. See *Kelley* v. *Hoogerhyde,* 314 Mich 37, and prior decisions there cited. Neither do we find any basis justifying a conclusion that relief should be denied on the ground that plaintiffs are now estopped to question the existence of the right-of-way.

The further claim is advanced on behalf of appellants that the granting of relief to plaintiffs will result in a material interference with plans for developing lot 12 of Assessor's Plat No. 12 and constructing residences thereon. It is said that such prejudice greatly outweighs any harm that may result to plaintiffs if the use of the claimed right-of-way is permitted. Based on such claim it is argued that the equitable relief sought by plaintiffs should be denied. Among other decisions of this Court attention is called to *Monroe Carp Pond Co.* v. *River Raisin Paper Co.,* 240 Mich 279. That case did not involve the right to enforce restrictions on the use of property. It was a suit in equity to enjoin the pollution of a stream, it being asserted that the defendant paper company was discharging refuse into the River Raisin to the injury of plaintiff which was operating a fishing pond as a lower riparian proprietor. The trial court allowed damages in lieu of the injunctive relief sought, and this Court affirmed the decree on the ground that enjoining defendant's operations would work a serious injury not only to defendant but also to the community at

large. It was pointed out that defendant's establishments employed 3,000 people, that the total investment in its plants was approximately $15,000,000, and that the majority of its mills were constructed before the plaintiff established its carp pond in 1916. Because of the results that would follow injunctive relief, the action of the trial court was sustained. Other cases cited by counsel are of like import.

In the case at bar we have a controversy in which the plaintiffs are insisting on a legal right. In *Austin* v. *Van Horn,* 245 Mich 344, a suit in equity to enjoin the violation of building restrictions, it was held that each owner of a lot in the subdivision had a right in the nature of a negative easement in other lots therein, and that such right might be enforced in equity regardless of the extent of the damages of the lot owner or owners whose right was violated. Prior decisions were cited in support of the holding that plaintiff was entitled to the relief sought. Likewise in *Smart Farm Co.* v. *Promak,* 257 Mich 684, plaintiff, which sought to enjoin the violation of a restriction relating to the use of lots in a subdivision, was held entitled to relief although it was not shown that it had suffered consequential damages. The rule in this respect was also recognized in *Oosterhouse* v. *Brummel,* 343 Mich 283, 289.

In the trial court defendants Rosso based their claim to a right-of-way over lot 109 on the agreement between the village of Birmingham and Sarah A. Peugeot, executed February 26, 1923. Their answer to the bill of complaint clearly indicated the situation in this respect and the testimony given by the defendant John H. Rosso on the trial in circuit court clearly suggested the issue as presented to the trial judge. Nonetheless it is insisted on appeal that this Court should determine that appellants are entitled to a way by necessity. It is doubtful if the proofs in the case were sufficient to permit a deter-

mination of the issue. Be that as it may, the failure to raise the question in the trial court precludes us from considering it on appeal. *Poelman* v. *Payne,* 332 Mich 597, 605, and prior decisions there cited.

We find no sufficient reason for reversing the decree of the trial court, and it is affirmed, with costs to plaintiffs.

Dethmers, C. J., and Kelly, Smith, Black, Edwards, Voelker, and Kavanagh, JJ., concurred.