BORMAN'S, INC., Plaintiff,

v.

GREAT SCOTT SUPER MARKETS,
INC., Defendant.

Civ. A. No. 4–72911.

United States District Court,
E. D. Michigan, S. D.

May 9, 1975.

Eugene Driker, Detroit, Mich., for plaintiff.

Irwin Alterman, Southfield, Mich., for defendant.

## MEMORANDUM OPINION AND ORDER GRANTING DEFENDANT'S MOTION FOR PRELIMINARY INJUNCTION

PHILIP PRATT, District Judge.

Borman's has filed the instant antitrust action against Great Scott in an attempt to invalidate a restrictive lease provision in Great Scott's lease with the landlord of the Lincoln Park Shopping Center. The defendant had previously filed a motion to dismiss which was denied by this Court on February 3, 1975. In this earlier motion, the defendant argued that the lease provision which granted it a partial exclusive at

the shopping center was per se legal. The Court held that no per se rule applied and that a violation of the antitrust laws in this case will turn upon the particular circumstances presented.

In its complaint, the plaintiff seeks an injunction restraining the defendant from compelling compliance with the lease provisions. In its answer, the defendant filed a counterclaim seeking to force compliance with the subject lease provisions. The defendant has filed the instant Motion for a Preliminary Injunction.

## DISCUSSION

■ Both parties[1] agree that in determining the propriety of issuing a preliminary injunction the Court should look to:

  a) the significance of the threat of irreparable harm to the movant;

  b) the balance between the harm to the nonmovant vis a vis the movant if the injunction is granted;

  c) the probability that the movant will succeed on the merits; and

  d) the public interest.[2]

The Court will analyze each of these factors seriatum.

## I. *HARM TO MOVANT.*

■ It is true, as contended by the plaintiff, that as a general rule the party seeking a preliminary injunction must show that he will be irreparably harmed if the court fails to grant his sought for equitable relief. However, there are two exceptions to the general rule. A showing of irreparable harm is unnecessary for the securing of equitable relief for a breach of contract:

"1. Where the subject-matter of the contract is of such a special nature, or of such a peculiar value, that the damages, when ascertained according to legal rules, would not be a just and reasonable substitute for or representative of that subject-matter in the hands of the party who is entitled to its benefit; or in other words, where the damages are *inadequate;*

"2. Where, from some special and practical features or incidents of the contract inhering either in its subject-matter, in its terms, or in the relations of the parties, it is impossible to arrive at a legal measure of damages at all, or at least with any sufficient degree of certainty, so that *no* real compensation can be obtained by means of an action at law; or in other words, where damages are *impracticable."* 4 *Pomeroy, Treatise on Equity Jurisprudence* § 1401, at 1033–34 (5th Ed. 1941) (emphasis in original). Cited in *A. L. K. Corporation v. Columbia Pictures Industries, Inc.,* 440 F.2d 761, 763 (3rd Cir. 1971).

The defendant impliedly contends that he falls within these two recognized exceptions and thus is absolved from the requirement that he show irreparable injury.

■ It is important to note that the defendant-movant is seeking to assert his rights under state law to enforce the leasehold covenant. Thus, it would appear entirely proper for the Court to look to state law to determine when and whether a showing of irreparable harm must be made. In analyzing the various decisions which have arisen out of restrictive covenants in leases which bar competition as a matter of state law, the commentators have observed:

"Where the action for injunctive relief by the lessee-covenantee is founded upon the prohibited use of the restricted premises by a competing lessee, the attention of the courts has more often been directed to the question of the enforceability of the covenant as against a competing lessee than to the propriety of granting injunctive relief against such lessee. However, it is clear that the fact that the lessee-covenantee might have some remedy at law, at least as against the lessor-covenantor, will not in itself prevent the award of injunctive relief.

"It has been said that injunctive relief against a competing lessee with notice is

1. Defendant's brief, p. 4; plaintiff's brief, p. 8.

2. See Wright & Miller, *Federal Practice & Procedure,* § 2948.

proper, whenever the damages are irreparable and difficult of computation. And it has been held with reference to particular fact situations that the court should exercise its power to grant injunctive relief, since otherwise the injury to the lessee-covenantee would be irreparable, owing to the inability to ascertain with accuracy the amount of damages sustained by the covenantee. But in most cases injunctive relief has been granted without discussion as to the propriety of such relief in relation to the particular facts involved, apparently on the implicit assumption that if the lessor's covenant is enforceable as against the party violating it, then either the particular facts justify the granting of injunctive relief or the violation of a covenant against competitive use presents the sort of situation in which the court should exercise its power to award such relief." Anno: "Lease-Covenant Against Competition" 97 A.L.R.2d 4, 123–124 (1964).

From the foregoing citation it seems that the defendant-movant need not make a clear showing that he will be irreparably harmed.

It is apparent that any damages to be sustained by Great Scott are not susceptible to easy computation. Although the immediate lost profits it may suffer might well be given a dollar value (e.g. average profits over the preceding years), potential lost good will and lost customers are somewhat more difficult to ascertain. Thus, the movant's damages are at least arguably inadequate and/or impracticable. A recognition of this fact when dealing with real estate leases has undoubtedly led the various courts which have faced the issue to pass over the harm aspects and concentrate upon the clauses' enforceability. *Id.*

Several Michigan authorities appear to establish the broad general principle that, under Michigan law, no showing of irreparable harm need be made where the movant is enforcing a property right created by lease or contract. *Pierce v. Riley*, 16 Mich.App. 419, 422, 168 N.W.2d 309 (1969);

*Birmingham Park Imp. Ass'n v. Rosso*, 356 Mich. 88, 99, 95 N.W.2d 885 (1959). Accordingly, further support is present for the proposition that the crucial issue as to the propriety of injunctive relief is the enforceability of the clause and not a showing of the existence of irreparable harm per se.

In *J. M. Fields of Anderson, Inc. v. Kroger Co.*, 310 F.2d 562 (5th Cir. 1962), the lower court held, and the court of appeals affirmed, that irreparable harm had been shown and that a preliminary injunction could properly issue under similar circumstances. In that case, the movant had shown that irreparable damage occurred where the defendant would be "siphoning away of the business, profits, customers and good will of the plaintiff and that the loss of such business, profits, customers, and good will is not only irreparable, but manifestly difficult of computation and ascertainment." *Id.* at 564.[3] The Fink affidavit, at ¶ 21, appears to touch closely the factors looked to by the lower court in *J. M. Fields.* Thus, it would appear that if a showing of irreparable harm must be made, that showing has been made in the instant case.

In summary, it is axiomatic that an individual seeking to have a preliminary injunction issue must show that he has or will be subjected to irreparable harm. However, an explicit showing is not required where those damages are impracticable or inadequate to ascertain. Further, when dealing with the enforcement of leasehold covenants, the damages of the party seeking to enforce the covenant and to obtain an injunction are generally held to be impracticable or inadequate. Accordingly, this defendant-movant need not make a factual showing of irreparable harm and the Court will proceed to scrutinize the enforceability of the clause in the context of the requirement of the likelihood of success on the merits.

---

**3.** But cf. *Nuclear-Chicago Corp. v. Nuclear Data Inc.*, 465 F.2d 428, 430 (7th Cir. 1972).

## II. SUCCESS ON THE MERITS.

■ The present case is somewhat unusual since it is the defendant which is seeking the injunction and not the plaintiff. In the normal case the plaintiff seeks the injunction and must therefore show a probable likelihood of success on the merits. It is somewhat unfair to impose a burden on the defendant-movant to show that this clause is probably enforceable under the *antitrust law* since the burden in the case in chief is clearly upon the plaintiff to show that the clause is unenforceable under those principles. Accordingly, an equitable allocation of the burdens in the case at bar with respect to the likelihood of success on the merits is: (1) the defendant-movant must show the likelihood of success that this clause is enforceable under state law; (2) the plaintiff then has the burden of going forward on the antitrust issue; (3) if the plaintiff meets his burden, then the burden is placed upon the defendant-movant to show that he has a likelihood of success on the merits in establishing that no antitrust law has been violated and that the subject provision is therefore enforceable.

### A. Movant-State Claim.

■ Neither research nor the briefs have been able to discover any Michigan authority relative to the enforceability of restrictive covenants in shopping center leases. In the annotation "Lease-Covenant Against Competition" 97 A.L.R.2d 4 (1964), the commentators found that such provisions have generally been held to be enforceable. They have neither been found to be unreasonable nor void as against public policy nor void as violative of state antitrust law. *Id.* at 14–19. In light of the general trend of state authority permitting enforcement of such clauses, it is most likely that the Michigan courts would enforce them under state law. Thus, this Court concludes that the defendant-movant has shown a probable likelihood of success on its claim under state law and that the burden of going forward now shifts to the plaintiff to establish the antitrust violation.

### B. Plaintiff-Prima Facie Antitrust.

The plaintiff argues that the instant clause is violative of antitrust law because: (a) the defendant has evinced an anti-competitive motive and intent to restrain trade; (b) the most recent developments in the area of restrictive shopping center leases constitute a per se violation or at least a trend in that direction. Each of these arguments will be discussed seriatum. While the plaintiff has not delineated its attack as based on first, per se violations and, second, on rule of reason violations, for the sake of clarity the Court will discuss the issues in that fashion.

1.) Motive.

The plaintiff grounds its alleged violation of the antitrust laws by the defendant upon a citation from *United States v. Columbia Steel Co.*, 334 U.S. 495, 522, 68 S.Ct. 1107, 1121, 92 L.Ed. 1533 (1947) wherein the court stated:

"A restraint may be unreasonable either because a restraint otherwise reasonable is accompanied with a specific intent to accomplish a forbidden restraint or because it falls within the class of restraints that are illegal *per se*."

From this passage, the plaintiff avers that once it is established that the defendant intended to reduce competition, then an antitrust violation has been made out. This appears to be an oversimplification of the issue and an overbroadening of the reaches of the principle.

■ The Court stated that there must be a "specific intent to accomplish a forbidden restraint." Thus, it is necessary for this Court to determine what constitutes a "forbidden restraint" as the Supreme Court used that term. A careful reading of the context in which this citation is found leads the reader to the conclusion that a forbidden restraint would be monopolization, group boycotts, price fixing, or the like, not a mere intent to reduce competition. In short, the Supreme Court held that a person violates the antitrust laws when either he commits a per se violation or performs some innocuous acts which are intended to have the same effect as would a per se violation.

As will be discussed later, it is clear that the defendant's actions do not constitute a per se violation. Accordingly, evil motive,[4] standing alone is insufficient. Since the defendant is not committing a per se violation, it must be shown that the actions of this defendant would have the same effect as if it were committing a per se violation[5] in order that the plaintiff carry its burden. This it has failed to do.

The plaintiff seeks to assert that a per se violation has been made out because the instant clauses have the same effect as would a price fixing arrangement. In support of this assertion the plaintiff cites to two Ohio Court of Common Pleas decisions. *State of Ohio ex rel. Brown v. Palzes, Inc.,* 39 Ohio Misc. 155, 317 N.E.2d 262 (Cuyahoga County Court C.Pl. 1973); *State of Ohio ex rel. Brown v. Zayre of Ohio, Inc.,* 1974–2 Trade Cases ¶ 75,232 (Cuyahoga County, Ohio Court C.Pl. 1974). Apart from the fact that these are lower, state court decisions, reached under state antitrust law, it does not appear that they stand for the syllogism plaintiff contends they do.

■ The United States Supreme Court has clearly stated:

> "[P]rices are fixed . . . if the range within which purchases or sales will be made is agreed upon . . . or if by various formulae they are related to the market prices." *U.S. v. Socony-Vacuum Oil,* 310 U.S. 150, 223, 60 S.Ct. 811, 844, 84 L.Ed. 1129 (1940).

Thus it can hardly be said that a reduction of competition ipso facto constitutes price fixing. A reduction of competition (e. g. elimination of competition) necessarily reduces price competition as well. To hold that all restraints on competition are per se violations because they result in stabilized prices is to ignore the well recognized statement of law that it is only *unreasonable* restraints of trade and/or competition

which impinge upon the antitrust laws. See e. g. 54 Am.Jur.2d, Monopolies § 31.

Further, there has been no showing that the instant clause *has* the same effect as would a price fixing arrangement or any other form of per se violation nor has it been shown that this clause is *intended* to have the same effect as would a price fixing arrangement, or any other form of per se violation. Accordingly, an actionable evil motive which was intended to achieve a forbidden restraint has not been established. See *United States v. Columbia Steel Co., supra.*

**2.) Per se Violation as to Shopping Center Leases.**

■ The plaintiff is also contending that restrictive covenants, such as the one hereinbefore the Court, are per se violations of antitrust statutes under the recent case law relative to shopping center leases. To support such a position the plaintiff refers to several FTC cases and two law review articles. (Plaintiff's brief, p. 26). Since the FTC cases arise out of a different statutory framework and since most of them resulted in consent judgments and not decisions on the merits, they are of little value in fashioning a new per se rule nor of indicating a trend in that direction. In "The Antitrust Implications of Restrictive Covenants in Shopping Center Leases" 86 Har.L.Rev. 1201 (1973) the author concluded that these lease provisions "should be held to be per se violations of the antitrust laws." However, such a rule would disregard important distinctions between and among the types of shopping centers involved, the type of store involved and the type of restraint involved. Since very real distinctions should be made depending upon the facts, any per se rule of illegality, or legality, should not be formulated.

---

**4.** The plaintiff would ascribe to any anti-competitive purpose the characterization of "evil motive."

**5.** The plaintiff implies that an intent to reduce competition is a "forbidden restraint." This quite clearly was not the Supreme Court's

view. Nearly all franchise, exclusive dealing and real estate agreements reduce and intend to reduce competition. Certainly, it cannot be maintained that these transactions are violative of antitrust without more having been shown or established.

The burden is upon the plaintiff to come forward with evidence that the defendant's covenant violates the antitrust laws. The plaintiff alleges two theories of liability: (a) evil motive vis a vis price fixing and (b) a per se rule. For the reasons aforediscussed, none of these legal theories seem to apply to the instant case and thus it cannot be contended that the plaintiff has sustained its burden as to any of them. In the absence of the applicability of these theories, the present analysis must be directed to the question of whether the plaintiff has sustained its burden under a rule of reason. If it has or does, then the burden would be upon the defendant to show a likelihood of success that the instant leasehold covenants are valid under the rule of reason. Since these burdens involve issues which are somewhat intertwined, they will be discussed simultaneously.

### 3.) Rule of Reason.

"The rule of reason is imprecise but workable. Questions of reasonableness under 15 USC § 1 are necessarily questions of relation and degree, and the rule of reason normally requires an ascertainment of the facts peculiar to the particular business: its condition before and after the restraint was imposed; the nature of the restraint and its effect, actual or probable; the history of the restraint and the evil believed to exist; the reason for adopting the particular restraint; and the purpose or end sought to be attained. This is not because a good intention will save an otherwise objectional regulation, but because knowledge of intent may help the court to interpret facts and to predict consequences. Whether a particular act, contract, or agreement was a reasonable and normal method in furtherance of trade and commerce may, in doubtful cases, turn upon the intent to be inferred from the extent of the control thereby secured over the commerce affected, as well as by the method which was used. At the same time, the Sherman Act cannot be evaded by good motives, and under the rule of reason, the promotion of self-interest does not immu-nize otherwise illegal conduct. But if the challenged practices were adopted for good business reasons and not to injure competitors, the test of their legality under the rule of reason is whether the effect upon competition in the market-place is substantially adverse. Apart from business motive, reasonableness under 15 USC § 1 depends on the percentage of business controlled and the strength of the remaining competition. In short, a contract, combination, or conspiracy violates 15 USC § 1 if unreasonable restraint was either its object or effect." 54 Am.Jur.2d Monopolies, § 31, p. 686.

In applying the rule of reason to the case at bar, this Court must necessarily assess what the effects on competition and trade are. In order to assess these effects, the Court must determine what the relevant market is in which the effects are felt. Thus, it is necessary for the plaintiff to make a showing of what the relevant market is and how competition and/or trade has been unreasonably affected within it. In *United States v. Arnold, Schwinn & Co.*, 388 U.S. 365, 87 S.Ct. 1856, 18 L.Ed.2d 1249 (1967), the court was faced with the legality of exclusive territory arrangements and customer limitations which had been imposed by the manufacturer upon its dealers. In analyzing the rule of reason the court held, at page 374, 87 S.Ct. at page 1863, that:

"[W]e must look to the specifics of the challenged practices and their impact upon the market-place in order to make a judgment as to whether the restraint is or is not 'reasonable' in the special sense in which § 1 of the Sherman Act must be read for purposes of this type of inquiry."

The plaintiff has, to date, made no attempt to establish what the relevant market is. Consequently, it is difficult to discern whether there has been an unreasonable restraint of trade as evidenced by an impact upon the market-place. Although the plaintiff asserts that the defendant is possessed of an "evil motive" (i. e., eliminating competition), this simply is insufficient,

standing alone, to make out a prima facie case of antitrust violation, nor even one under the rule of reason. Even assuming that the plaintiff establishes a relevant market (e. g. Lincoln Park and its surrounding environs), it must be shown that this market has been unreasonably affected by the instant lease provision.

A relevant consideration as to the impact upon the market is whether there has been a foreclosure of market alternatives. *Elder-Beerman Stores Corp. v. Federated Dept. Stores, Inc.*, 459 F.2d 138, 146 (6th Cir. 1972). See also *Colorado Pump Supply Co. v. Febco, Inc.*, 472 F.2d 637, 640 (10th Cir. 1973). In the present case there has been no attempt, to date, to show that this provision inhibits reasonable market alternatives. While it is true that all property is unique, the plaintiff should be required to show that this particular piece of property is so unique that its exclusion from tenancy unreasonably restrains and denies reasonable market alternatives to it.

██ It appears that, at this juncture, the plaintiff has not shown unreasonable restraints of trade under the rule of reason. On the other hand, and at this stage of the proceedings, the defendant has made an adequate showing of its position.

The situation at bar is not unlike exclusive selling arrangements which have generally been upheld. See *Ace Beer Distributors v. Kohn*, 318 F.2d 283 (6th Cir. 1963). Moreover, the circumstances of this case, as revealed thus far by the record, would indicate a reasonable restraint, even though there is an anti-competitive motive. This tentative conclusion is reached because of the apparent factual context, i. e., a relatively small neighborhood center serving a restricted area, as opposed to a regional type of center; the presence of two supermarkets in the center; the size and configuration of the center; the presence of other supermarkets in the area, including plaintiff's supermarkets; and the exclusive covenant having a restricted areal effect.

Thus, as to this issue the likelihood of success rests with the defendant. This caveat should be added, however. Because of the urgency of the matter, and because of the problems created by virtue of pending related suits in the state court, it was agreed by the parties in a chambers conference that this court would determine the question on the record that could be proposed to this point. The Court recognizes that the case is young and in its early discovery stages. Therefore, findings and conclusions are necessarily preliminary only.

### III. *BALANCE OF HARMS.*

██ As discussed, *supra*, the injury to the movant is difficult, if not impossible, to ascertain should this injunction be denied. It has a going concern which may well be destroyed or severely injured by the opening of plaintiff's store. The only damage which the plaintiff has or will suffer arises from the loss of prospective profits along with accrued rent which becomes due during the pendency of the injunction. At best, all that can be said is that an analysis of the relative harms reaches equivocal results.

In balancing the equities of the parties, it would appear that the injunction should issue. Preliminary injunctions are intended to preserve the status quo. To refuse to grant the injunction would severely alter the status quo since Borman would obtain, on an interim basis during the pendency of this action, precisely what it sought by filing the instant suit or at least enable it to attempt to gain a preferential status.

### IV. *PUBLIC INTEREST.*

██ The plaintiff argues that since this injunction would delay or totally deny effective competition within the Lincoln Park shopping center and since competition is in the public interest, it therefore follows that the public interest can best be served by denying the injunction. However, individual stores within a chain in a given market usually have uniform pricing patterns. As such, it is hard to see how price competition is furthered by allowing this particular store to open. While a "cancerous price war" may develop (Deposition of Nathan

Fink), it is questionable whether this is in the public's interest in the long run. Thus, like the balancing of harms approach, the factor of the public interest renders equivocal results.

It was mentioned at the outset of this opinion that the case at bar was unusual in its alignment of the parties. Another element has arisen, or at least made known to the Court, which enhances the unusual nature of the case. It appears that one of the issues in one of the state court cases involves the validity of an option to renew or extend in defendant's lease and whether that option had been properly and timely exercised. It is further this Court's understanding that in the event the state court determines that the defendant failed to exercise the option in a proper and timely fashion, defendant's lease will terminate on August 31, 1975. That issue is purely a state court matter between the defendant here and its landlord, but will nevertheless have a profound effect on the case at bar. It is not known, however, whether that issue will be determined prior to August 31, 1975.

In view of that circumstance, it is considered prudent and fair that this Court's injunction restrain the use by the plaintiff of the store in question but refrain from now enjoining any remodeling or other work on the premises. This with the understanding that had the issue not arisen, the Court would have felt constrained to grant the injunction as prayed for by the defendant, such injunction would then have extended to remodeling and other work. This understanding should also include the admonition that plaintiff proceeds at its peril in the expenditure of time, effort and funds in that course of conduct.

An order may enter in accordance with the foregoing.

IT IS SO ORDERED.