MICHIGAN CENTRAL RAILWAY CO. *v.* MILLER.

1. EMINENT DOMAIN—PETITION—DEMURRER.
   In eminent domain proceedings by a railroad corporation to acquire land for a passenger depot, streets to provide access thereto, and other accommodations for the public, it was proper to overrule a demurrer to the petition which set forth the purpose for which petitioner required the land, alleged a public necessity for the taking, and action on the part of petitioner determining that they were required, and showing that petitioner was in possession under previous condemnation proceedings which proved to be defective, and that it had made a *bona fide* effort to purchase the property.

2. SAME—RES JUDICATA.
   When the original proceeding proved abortive, petitioner was warranted by statute (2 Comp. Laws, § 6251, 3 How. Stat. [2d Ed.] § 6604) in bringing a new proceeding; the first judgment (*Michigan Cent. R. Co.* v. *Ferguson*, 162 Mich. 220 [127 N. W. 320]) did not bar its right to acquire the property.

3. SAME—ADJACENT GROUND TO MAIN LINE.
   While the depot was not to be constructed upon the ground in question, which was covered by tracks and train sheds, and by public and private driveways, it could not be said that the property was not adjacent to the main line of defendant, within the intent of the statute, the evidence showing that the railroad company had acquired all lands intervening between the right of way and the property in question.

4. SAME—CERTAINTY—TENTATIVE PROJECT.
   Though petitioner's project appeared to be tentative and uncertain in the original proceedings, after $2,500,000 had been spent and a detailed plan prepared and partly executed, there was no further basis for such objection.

5. SAME—PUBLIC NECESSITY—APPROACHES—STREETS.
   Petitioner was also justified in condemning land for proper access to its grounds, under an ordinance of the city requiring the corporation, as a condition, to furnish lands to be used as a street, under petitioner's tracks, although no power is conferred by the statute to condemn land solely for street purposes.

6. SAME.

Land required to obtain proper light and space was also taken justifiably for petitioner's use.

7. SAME—MAP—PETITION.

Under Act No. 128, Pub. Acts 1905, no map was required to be certified and filed. (2 Comp. Laws, § 6232, as amended, 3 How. Stat. [2d Ed.] § 6585.)

8. SAME—MUNICIPAL CORPORATIONS—HIGHWAYS AND STREETS.

The city of Detroit was authorized to vacate certain streets and alleys which the council determined it was a public necessity to vacate in conjunction with the plan of petitioner, and the latter was entitled to acquire the abutting property. Detroit Charter (1904), § 169.

9. SAME—VACATION OF STREET.

Upon vacating a public street or alley by the proper authority the title reverts to the abutting owners.

10. SAME—FEE.

And condemnation of the lots carries with it all rights of the owners in ways appurtenant to the premises.

11. SAME—VALUE—GOOD FAITH.

An attempt on petitioner's behalf to purchase for $8,000 property for which the jury awarded $7,900, and which the city assessors valued at $3,000, and no witness for petitioner valued at more than $5,000, could not be held to have been made in bad faith.

12. SAME—DAMAGES.

An award of $7,900 as damages for the land taken was not inadequate, notwithstanding that one of the respondents purchased property of another for $11,250, which, the record showed, was in excess of its value and was paid in furtherance of a scheme to secure a sum greater than the true value.

13. SAME—VERDICT—BLANK FINDING.

A blank finding, as prepared by counsel for petitioner, containing proper spaces for a verdict for or against petitioner, was not improperly submitted to the jury.

Appeal from Wayne; Hosmer, J. Submitted January 25, 1912. (Docket No. 34.) Decided October 2, 1912.

Eminent domain proceedings by the Michigan Central Railway Company against Edwin Miller and Burr Lobdell to take private property for railroad purposes. From a

verdict for petitioner awarding damages, respondents appeal.  Affirmed.

*Albert McClatchey* and *Brakie J. Orr*, for appellants.

*J. W. Dohany* and *Gray & Gray*, for appellee.

BROOKE, J.  This is the second time this case has been before the court.  It will be found reported at 162 Mich. 220 (127 N. W. 320).  We there held that the petition was not, upon its face, so defective as to deprive the court of jurisdiction, but dismissed the action because the proofs failed to show that the petitioner had taken the necessary corporate action to determine that the land in question was required for corporate purposes, and also because the evidence wholly failed to prove any attempt to purchase the land described in the petition.  It was also intimated that the contemplated improvement might require the making, certification, approval, and filing of a map.

After obtaining leave from the circuit court, petitioners filed an amended petition, which sets out, among other things, the following:

"*Fourth.*  That your petitioner requires, for the purpose of constructing, operating, and maintaining its railroad and appurtenances, and its stations, depots, and other accommodations, the property adjacent to its main line and situated in the city of Detroit, in the county of Wayne, State of Michigan, described as follows, to wit: Lots numbered two hundred fifty-nine (259) and two hundred sixty-three (263) of the subdivision of part of private claim four hundred seventy-three (473), known as the Stanton farm, as per plat recorded in Liber 47 of Deeds, pages 558 and 559, Wayne county records.  That said property, together with other property acquired by your petitioner for said purposes, and to be used in connection therewith, constitute premises which adjoin the main line of your petitioner's railroad.

"*Fifth.*  That the taking thereof is necessary for the public use.

"*Fifth A.*  That your petitioner by proper action has heretofore determined that the said land hereinbefore described is required, and that the same be acquired for its

corporate purposes hereinbefore mentioned, and that this petition is filed in pursuance of such action. That the purposes for which said land is so needed by your petitioner are those hereinbefore mentioned and described."

"*Seventh.* Your petitioner shows that it is now in the actual possession and occupancy of the said premises, having entered into such possession and occupancy by virtue of proceedings had in the circuit court for the county of Wayne for the condemnation thereof for public use for railroad purposes, which said proceedings have been dismissed by an order of the Supreme Court of the State of Michigan, entered in a cause pending therein, entitled the *Michigan Central Railroad Co., Petitioner* v. *Elizabeth Ferguson, Edwin Miller,* and *Burr Lobdell, Respondents,* known as file No. 23,291, to which order and the opinion filed therein, on July 14, 1910, and the files, records, proceedings, and cause in which the same are made, reference is hereby made for greater certainty as to the nature, extent, and effect thereof.

"*Eighth.* That your petitioner has endeavored to acquire the title to said premises by agreement from the owners thereof, and has been unable so to do, for the reason that the owners thereof refuse to accept a reasonable sum of money therefor, which your petitioner has offered, and which is a sum of money far in excess of what your petitioner believes is the fair value thereof, and that said owners decline and refuse to name any sum which they will accept in payment therefor."

A demurrer was interposed by respondents, which was overruled. Inasmuch as we held the former petition sufficient to confer jurisdiction, and as the averments in the amended petition are fuller and, to some extent, more specific than those contained in the original, we must hold that the order overruling the demurrer was properly entered.

It is contended by respondents that the matter at issue in this proceeding is *res adjudicata* because of our former decision. To sustain this contention would be to hold that, where condemnation proceedings prove abortive because of lack of jurisdiction or failure of proof, the petitioner is thereafter debarred from commencing a new proceeding and correcting the errors in the earlier proceeding.

We think the statute (2 Comp. Laws, § 6251, 3 How. Stat. [2d Ed.] § 6604) confers the right upon the petitioner to bring a new proceeding when the original one has proven abortive. *Matter of Convers,* 18 Mich. 459; *Peninsular R. Co.* v. *Howard,* 20 Mich. 18; *Chicago, etc., R. Co.* v. *Sanford,* 23 Mich. 418. See, also, *Lehigh Valley R. Co.* v. *Railroad Co.,* 43 N. J. Law, 528; *Ligare* v. *Railroad Co.,* 166 Ill. 249 (46 N. E. 803).

After the trial of the original case, and on September 23, 1909, the city of Detroit, by ordinance, vacated certain streets and alleys, in order that the petitioner might carry out its project of constructing a new passenger depot in the city of Detroit. After the award in the original case, the petitioner took possession of the property in question under the statute; and it appeared upon the second trial that respondents' lots were at that time, for the most part, covered by heavy steel structures, to be used in connection with the proper handling of petitioner's business at the new depot. While the depot itself is not to be built upon the ground in question, more than half thereof is covered by tracks and the train shed. A further portion will be occupied by the private driveway to the baggage-room. The balance thereof will be used, with other lands, to form what is known as the "Depot Esplanade"— a way devoted to the use of the public generally, but particularly necessary for the accommodation of that portion of the public going to and from petitioner's new depot, and to afford the light and air necessary for said structure.

The evidence introduced at this trial shows affirmatively that petitioner's board of directors passed upon the tentative plan in 1907, and upon the general or detailed plan on December 24, 1910, and that at the time of the trial some two and one-half millions of dollars had been spent by petitioner upon the enterprise; and the plans and drawings produced at the time of the trial and submitted to this court, as well as the testimony, show affirmatively that petitioner had acquired and paid for all the lands

lying between their original right of way and the property in question, the title thereto at present being held by the Union Trust Company for the sake of convenience, to get the entire property, in its integrity, subject to one conveyance. Under the facts made to appear at this trial, we do not think it can be said that the lots in question are not "adjacent" to the main line of the railroad, within the meaning of the statute.

In our former opinion we held that the whole matter appeared to be "tentative and indefinite." What was then indefinite has now been made certain; and there can no longer be doubt that the petitioner is proceeding with energy and in good faith to complete this great project, under plans which have received the necessary corporate sanction.

Appellants contend that under the law petitioner has no power or right to condemn land for the purpose of dedicating it to the public as a public highway for general public travel. The record shows that the ordinance of the city of Detroit vacating certain streets and alleys, to be covered in part by the new depot, imposes upon the petitioner, as a condition, the duty of furnishing to the city certain lands described, to be used as a street, which street traverses a portion of the two lots in question partly under the tracks of petitioner.

We think a sufficient answer to this proposition is found in the claim of petitioner that all of this property is necessary for railway purposes. That portion of these lots used to provide for the public the necessary means of ready access to the facilities to be provided for the accommodation of the public is devoted to a railway purpose no less than that portion actually covered by the structures of the petitioner. It is shown that the portion over which the public is granted the right of passage by dedication is necessary, in order to afford the requisite light and air, as well as access, to the structure itself; and that it would have been necessary, even though the general public were denied passage over it. In any event, the question would

seem to be set at rest by the verdict of the jury, which recites:

" We did and do hereby ascertain and determine that the public necessity did and does require that all the real estate and property described in said petition should be taken for public use."

This verdict was rendered under a charge upon this point as follows:

" I charge you, under the evidence in the case, that the railroad company is entitled to acquire a reasonable amount of land for the purpose of having proper light and access to its depot, provided, gentlemen of the jury, you find that there is a necessity, as claimed by the petitioner; and the mere fact that it intends to grant to the city of Detroit a right of way over a certain part of the premises in question is not inconsistent with its acquirement of the premises for railroad purposes; is not inconsistent with or prohibitive of its use for railroad purposes, or for access of light to its station and accommodations in connection therewith."

We approve the language of this instruction.  We have no doubt that under our statute petitioner has no power to condemn land solely for a public street.  *Chicago, etc., R. Co.* v. *Galt*, 133 Ill. 657 (24 N. E. 674).  But, where such land is necessary for railroad purposes, the incidental use thereof as a street by the public does not destroy that power.

The instant proceeding is not defective because of the failure of petitioner to make, certify, and file a map.  2 Comp. Laws, § 6243, was amended by Act No. 80 of the Public Acts of 1901.  (3 How. Stat. [2d Ed.] § 6596.) As amended, the section, which sets out the requirements of the petition, contains no provision requiring an allegation that a map or survey has been filed.  *Detroit, etc., R. Co.* v. *Campbell*, 140 Mich. 384 (103 N. W. 856).

2 Comp. Laws, § 6232 was amended by Act No. 128 of the Public Acts of 1905 by adding to the section the following proviso:

"*Provided, further*, that a map shall not be necessary

as a basis for condemnation proceedings affecting the property sought to be obtained for railroad purposes and situated adjacent to the main line of the petitioner's railroad." (3 How. Stat. [2d Ed.] § 6585.)

As before pointed out, the petitioner having acquired and being in possession of all the lands lying between its main line and the property sought to be condemned, that property was properly held by the learned circuit judge to be "adjacent," within the meaning of the statute.

There has been no change in the main line of the petitioner at this point. The property acquired is all adjacent to that line as it has existed for a great many years. Petitioner attacks the validity of the ordinance of the city of Detroit which vacates certain streets and alleys upon condition that the petitioner comply with certain requirements therein set forth. The right of the municipality to vacate a street or alley by proper proceedings, when deemed necessary in the public interest, is clear. Detroit Charter (1904), § 169. It is the claim of petitioner—and the claim is borne out by the testimony and exhibits in the case—that petitioner has acquired the lands abutting upon the streets and alleys vacated by the ordinance. It is elementary that upon the vacation of a street or alley the land reverts to the abutting owner or owners. *Schmolt* v. *Nagel*, 151 Mich. 502 (115 N. W. 411).

While the owners of the lots in question had undoubted rights in the street in front of said lots, the condemnation by the jury of the lots themselves includes all rights in the ways appurtenant thereto. *Cincinnati, etc., R. Co.* v. *Railroad Co.*, 106 Mich. 473 (64 N. W. 471).

Appellants urge further that the petitioner did not attempt, in good faith, to acquire the land amicably before commencing these proceedings. The record shows that an offer of $8,000 in cash was made on behalf of petitioner by persons duly authorized to act in the premises. It is said that the agents for petitioner knew, or had good reason to believe, that such offer would be rejected; and therefore it was made in bad faith. We do not think the

conclusion is warranted by the premise. The property was assessed at $3,000. No witness for petitioner (and several experts were sworn) valued the property at more than $5,000.

The evidence introduced as to what was paid by petitioner for property in the immediate vicinity clearly indicates that the offer was reasonable, if not liberal; and the verdict of the jury, fixing the value at $7,900, with interest from December 6, 1909 (the date when petitioner took possession of the premises under the abortive proceedings), is a refutation of respondents' claim that the offer was inadequate, or made in bad faith. The fact that the parties disagreed and had been in litigation has no bearing upon the question. All the statute requires is that a bona fide effort be made to acquire the property by purchase. *Cincinnati, etc., R. Co.* v. *Railroad Co., supra.*

It is urged that the award is inadequate. Inasmuch as respondent Lobdell claimed to have paid Mrs. Ferguson $11,250 for the property, respondents contend that the jury should have been instructed to award at least that amount. There is no merit in this contention. We think the record clearly shows an attempt on the part of respondents to enhance their claim for damages, to the end that they might receive from the petitioner in condemnation proceedings a sum much in excess of the true value of the lands in question. The statute was never intended as an aid to such an end. It seeks to and does protect the owner in the possession of his property until it is shown that his private rights must yield to a larger public necessity. When such private rights are made so to yield, *just compensation* must be made.

The verdict of the jury, both as to. necessity and compensation, met with the approval of the court below, and it meets with ours.

A verdict was prepared by counsel for petitioner and submitted to the jury by the court at the conclusion of the

charge. This verdict contained the formal language necessary for a finding either way, and blanks were left wherein the jury must insert their findings as to necessity, either for or against, and as to the amount of the award. We do not find the submission of such a paper to the jury erroneous. *Manistee, etc., R. Co.* v. *Fowler,* 73 Mich. 217 (41 N. W. 261).

Error is assigned upon the admission of certain testimony and upon the charge of the court. These assignments have been examined, but have been found to be without merit.

The judgment is affirmed.

MOORE, C. J., and STEERE, MCALVAY, STONE, and OSTRANDER, JJ., concurred. BIRD, J., did not sit.