# STATE OF MICHIGAN

# COURT OF APPEALS

---

WILLIAM W. CARRUTHERS, HUNT/KERN
COTTAGE, LLC, DAVID E. KERN,
KATHERINE S. KERN, MARY G. PETERS,
ROBERT H. RUSSELL, LEAH H. STEARNS,
and SALLY VAN VLECK,

            Plaintiffs-Appellees,

v

FREDERIC S. SHAFFER JR. FAMILY LIMITED
PARTNERSHIP, II,

            Defendant-Appellant,

and

NE-AH-TA-WANTA RESORT ASSOCIATION,

            Defendant-Appellee.

UNPUBLISHED
February 24, 2015

No. 319091
Grand Traverse Circuit Court
LC No. 12-029338-CH

---

Before: RIORDAN, P.J., and MURPHY and BOONSTRA, JJ.

PER CURIAM.

Defendant-appellant (the partnership) appeals as of right an order of the circuit court granting plaintiffs' motion for summary disposition on count I of plaintiffs' three-count complaint to quiet title to disputed property; the three counts reflected three different theories under which plaintiffs claimed to hold an easement interest in a walkway. Count I sought a declaratory judgment recognizing a walkway easement as reserved under a 1923 deed. The parties stipulated to the dismissal of count II of plaintiffs' complaint, which had sought recognition of a walkway easement by prescription (adverse possession principles applied to easements). The circuit court, with a caveat discussed below, granted the partnership's motion for summary disposition on count III of plaintiffs' complaint, which had sought a declaratory judgment recognizing a walkway easement pursuant to the private rights held by plat lot owners to platted streets. We affirm the circuit court's ruling that recognized the existence and enforceability of a continuing walkway easement.

The disputed walkway crosses Cottage Grove Avenue, which platted road was located adjacent to and west of the Bower's Harbor shoreline, while also abutting various parcels on

-1-

their eastern borders, including lots owned by the partnership, creating a path of separation between the lots and the water. The partnership is the owner of lot 15 and the southern half of lot 13 in block one, which are both adjacent to Cottage Grove Avenue, along with lot 14 in block one in the Ne-Ah-Ta-Wanta plat in Peninsula Township. Plaintiffs are lot owners in the Ne-Ah-Ta-Wanta plat, including some who own lots in block 1 adjacent to Cottage Grove Avenue, and/or shareholders of the Ne-Ah-Ta-Wanta Resort Association who wish to use the walkway to access the shoreline and other common areas on the peninsula. The section of the walkway at issue is the section which passes over that portion of Cottage Grove Avenue directly abutting the partnership's property. The partnership, claiming ownership of that portion of Cottage Grove Avenue and therefore ownership of the walkway located therein, erected a fence across and over the walkway, accompanied with a no-trespassing sign, as a measure to block access by others, including plaintiffs. For nearly a century, the walkway was utilized by lot owners in the plat without dispute.

The Universalist Resort Association (URA), a former Michigan corporation organized under 1889 PA 39, established the Ne-Ah-Ta-Wanta plat on August 4, 1890, and dedicated multiple streets for public use, including Cottage Grove Avenue. No governmental entity or authority ever formally or informally accepted the dedicated street, and there is no dispute between the parties on that matter. In 1890, the URA deeded lots 13, 14, and 15 to individual purchasers; the earliest predecessors to the partnership's interests. It is these conveyances that the partnership contends, for reasons discussed below, created fee interests held by their predecessors in the abutting portions of Cottage Grove Avenue to the full extent of its width down to the lake, including the area of the now-disputed section of walkway.

Around 1907, the URA became insolvent and Orrin E. Brown became the receiver of "all the estate and effects" of the URA. Brown sold all of the URA's remaining property in the Ne-Ah-Ta-Wanta plat to Elizabeth R. Furman and Mary Kroupa at a public auction on May 11, 1907. The deed indicated that the URA's property was "platted into lots and streets by plat dedicated [to] the public as the plat of 'Neahtawanta.' " In addition to all unsold lots within the Ne-Ah-Ta-Wanta plat, the deed conveyed to Furman and Kroupa "all other property, estate and effects of said dissolved corporation of every kind and nature and wherever situated . . . together with all and singular the hereditaments and appurtenances thereunto belonging." Thereafter, Kroupa apparently deeded her interest to Furman's husband, and the Furmans together deeded the property to Leon Titus.

On May 12, 1908, Titus deeded the unsold lots in the Ne-Ah-Ta-Wanta plat remaining from the conveyance by the Furmans to the Ne-Ah-Ta-Wanta Resort Association. This deed transferred "all and singular the hereditaments and appurtenances thereunto belonging" to the conveyed property within the plat. The deed made multiple references to the recorded plat. On August 6, 1923, the Ne-Ah-Ta-Wanta Resort Association, by quitclaim deed, conveyed to Mary Black, Frances Hunt, Eloise Howe, and Margo Minor the following:

> All that tract formerly occupied and used as part of the highway abutting upon and next to the lots in Block One (1) of Nehatawanta, according to the plat thereof recorded in the office of the register of deeds for Grand Traverse County, August 29, 1893, in Liber 2, page 46.

Together with all and singular the hereditaments and appurtenances thereunto belonging or in anywise appertaining: TO HAVE AND TO HOLD the said premises above described to the said parties of the second part, and to their heirs and assigns, to the sole and only proper use, benefit and behoof of the said parties of the second part, their heirs and assigns forever; *subject, however, to the right of the grantor herein and any and all other parties whomsoever, which said right is hereby excepted and reserved to a right of way over the premises herein granted for pedestrian travel only.* [Emphasis added.]

Although the 1923 deed did not refer to the highway abutting the lots in block one as "Cottage Grove Avenue," the circuit court found that the deed was in fact referencing Cottage Grove Avenue. The circuit court also found that the language of the 1923 deed reserved an easement for pedestrian use over Cottage Grove Avenue in favor of all lot owners in the Ne-Ah-Ta-Wanta plat and all members of the Ne-Ah-Ta-Wanta Resort Association. The partnership adamantly maintains that the 1923 deed did not and could not convey any interest in that portion of Cottage Grove Avenue that abutted its property, given that the partnership's predecessors in title held a full fee simple interest in that portion, not the Ne-Ah-Ta-Wanta Resort Association, in light of the fact that the dedication of Cottage Grove Avenue had never been accepted by a governmental entity or authority. Thus, according to the partnership, the Ne-Ah-Ta-Wanta Resort Association lacked the legal capacity to convey the roadway it did not own. And therefore, it was impossible for the Ne-Ah-Ta-Wanta Resort Association to reserve any easement in Cottage Grove Avenue for the benefit of others. The four grantees in the 1923 deed were the owners of lots in block I that abutted Cottage Grove Avenue, and we further note that grantee Margo Minor was a predecessor in title to the partnership's property.

In September 1978, Frederic S. Shaffer, Jr., Margo Shaffer, and Margaret Shaffer Smith, the partnership's predecessors in title, filed an application in Grand Traverse Circuit Court to vacate the portions of Cottage Grove Avenue abutting their lots (13 and 15) in block one of the Ne-Ah-Ta-Wanta plat. On October 13, 1980, the court issued an order vacating the portions of Cottage Grove Avenue abutting lots 13 and 15, "[s]ubject to easements or restrictions, if any." The judgment vested title to Cottage Grove Avenue in the partnership's predecessors "free and clear of all right and title which the County of Grand Traverse, Township of Peninsula, or the public generally, has or heretofore may have had, by reason of any survey, plat or dedication thereof."

In August 2012, after the partnership had erected the fence and attempts at settlement failed, plaintiffs filed a complaint claiming the right to use the walkway across Cottage Grove Avenue, including that portion abutting the partnership's property. In count I, plaintiffs sought a declaratory judgment recognizing a walkway easement as reserved under the 1923 deed. In count II, plaintiffs claimed that an easement by prescription had been established with respect to the walkway. In count III, plaintiffs sought a declaratory judgment recognizing a walkway easement pursuant to the private rights held by plat lot owners to platted streets. On motions and countermotions for summary disposition, the circuit court granted summary disposition in favor of plaintiffs with respect to count I of their complaint. On count I, the circuit court found that the 1923 deed "reserved a valid easement for pedestrian purposes across Cottage Grove Avenue, including any portion of Cottage Grove Avenue that [was subsequently] vacated." The circuit court entered a stipulated order dismissing count II of plaintiffs' complaint without prejudice.

-3-

The circuit court granted summary disposition in favor of the partnership on count III of plaintiffs' complaint, but then noted that the order "shall not be construed as impairing any of the relief granted by the court in its order on count I."

We review de novo a trial court's decision on a motion for summary disposition. *Latham v Barton Malow Co*, 480 Mich 105, 111; 746 NW2d 868 (2008). In this case, the circuit court did not specifically indicate whether it granted plaintiffs' motion for summary disposition pursuant to MCR 2.116(C)(8) or (C)(10), which grounds were both argued by plaintiffs in their motion. However, because the court considered documents outside the pleadings, we review the court's decision under MCR 2.116(C)(10). See *Spiek v Mich Dep't of Transp*, 456 Mich 331, 338; 572 NW2d 201 (1998). Summary disposition under MCR 2.116(C)(10) tests the factual sufficiency of a complaint and entails examination of all the documentary evidence submitted in the case in a light most favorable to the party opposing the motion. *Maiden v Rozwood*, 461 Mich 109, 120; 597 NW2d 817 (1999). If "the proffered evidence fails to establish a genuine issue regarding any material fact, the moving party is entitled to judgment as a matter of law." *Id.*

On appeal, the partnership argues that the circuit court erred in granting plaintiffs' motion for summary disposition on count I because the Ne-Ah-Ta-Wanta Resort Association did not possess property rights in Cottage Grove Avenue when it executed the 1923 deed. Therefore, according to the partnership, the Ne-Ah-Ta-Wanta Resort Association did not have the legal capacity to reserve any easement over Cottage Grove Avenue.

A dedication is "an appropriation of land to some public use, accepted for such use by or in behalf of the public." *Clark v Grand Rapids*, 334 Mich 646, 656-657; 55 NW2d 137 (1952). "For a road to become public property, there must be (a) a statutory dedication and an acceptance on behalf of the public, (b) a common-law dedication and acceptance, or (c) a finding of highway by public user." *2000 Baum Family Trust v Babel*, 488 Mich 147, 150; 793 NW2d 633 (2010). Here, a statutory dedication under the plat act was pursued by the plat proprietor, URA, because the dedication was contained in a recorded plat that designated roads for public use, evidencing a clear dedicatory intent. *Id.* at 149. Two elements are required to establish a public road through statutory dedication: (1) "a recorded plat designating the areas for public use, evidencing a clear intent by the plat proprietor to dedicate those areas to public use," which we had here, and (2) "acceptance by the proper public authority." *Kraus v Dep't of Commerce*, 451 Mich 420, 424; 547 NW2d 870 (1996). A competent public authority must properly accept dedicated property to establish a public road because a dedicator cannot impose property upon a public entity without consent. *Wayne Co v Miller*, 31 Mich 447, 450 (1875). "[P]ublic acceptance is always required[.]" *2000 Baum Family Trust*, 488 Mich at 149. "Under any other rule, duties and financial responsibilities would be imposed on the government for dedicated roads that it never knowingly or intentionally accepted." *Id.* at 150.

A public authority may formally accept a dedicated roadway through resolution or ordinance, or may informally accept a dedicated roadway by expending public funds to repair, improve, or construct a road. *Rice v Clare Co Rd Comm*, 346 Mich 658, 665; 78 NW2d 651 (1956). With respect to the historical timeframe at issue here, if a road was accepted by a public authority, the public obtained what was described as a "base fee," which conveyed only the rights necessary to fulfill the use and purpose for which the property was dedicated. *2000 Baum*

*Family Trust*, 488 Mich at 158-166, 173 (discussing the Plat Act of 1887; 1887 PA 309);[1] see also *Baldwin Manor, Inc v City of Birmingham*, 341 Mich 423, 430; 67 NW2d 812 (1954) ("[I]f a dedication is made for a specific or defined purpose, neither the legislature, a municipality or its successor, nor the general public has any power to use the property for any other purpose than the one designated.") (citation and quotation marks omitted).  The owner of property that abuts a public street holds an interest the same as the general public to use the street, holds a reversionary interest to the center of the street, and holds the right of ingress and egress to and from the street.  *2000 Baum Family Trust*, 488 Mich at 152.

When a public street is vacated or abandoned, the land reverts to the abutting property owners.  *Id.* at 155-156 ("[W]ithout regard to the road's location, title to a street that is vacated or abandoned vests in the owners of the lots abutting the street."); see also *Mich Central R Co v Miller*, 172 Mich 201, 208; 137 NW 555 (1912) ("It is elementary that upon the vacation of a street or alley the land reverts to the abutting owner or owners.").  Likewise, as to publicly-accepted roadways, "[w]here one conveys land bounded upon a public highway, or lots upon a plat, representing them to be bounded by a street, the grantee takes the land to the center of the highway or street."  *Scudder v Detroit*, 117 Mich 77, 80; 75 NW 286 (1898).  Here, had the dedication of Cottage Grove Avenue for public use been accepted, the accepting governmental entity would have held a base fee, with the abutting lot owners holding a reversionary interest and a property interest that the partnership refers to as an "underlying fee" (that part of a fee interest not encompassed by the government's base fee in the roadway).

The question that arises concerns identifying the nature of a street-abutting lot owner's interest when a dedication of the street for public use *is never accepted and the street never becomes a public street.*  In *Field v Village of Manchester*, 32 Mich 279, 281 (1875), our Supreme Court indicated:

> It is very evident that something more than a mere offer of dedication by platting is necessary in order to make it a public highway.  There must be an

---

[1] Our Supreme Court explained in more detail:

> The lower courts' fundamental error was in their understanding of the property interest conveyed to the [governmental entity] by the 1887 plat act. We are not left to analogy or intimation in ascertaining the law of this state governing the nature of this interest. The statute and our precedents dating back well over a century tell us all we need to know to decide this case. We know that the "fee" conveyed by the statute is held "in trust to and for the uses and purposes therein designated, and for no other use or purpose whatever." 1887 PA 309. We know this fee conveys only "nominal title." We know that the statute does not convey "title in the nature of a private ownership." We know that the [governmental entity] was not conveyed any rights that were not necessary to the use and purpose for which the street was dedicated. And we know that the nomenclature to describe this interest is a "base fee." [*2000 Baum Family Trust*, 488 Mich at 173 (citations omitted).]

acceptance on the part of the public. When a person in platting property maps out streets thereon, the authorities may accept them in whole or in part. . . . *In case they do not, however, within a reasonable time accept of the streets thus offered to be dedicated, the owners of the lands fronting thereon, may again take possession of the property, and treat it as though, in all respects, no offer of dedication had ever been made.* [*Id.* at 281 (emphasis added).]

In *Loud v Brooks*, 241 Mich 452, 456; 217 NW 34 (1928), the Michigan Supreme Court similarly observed:

We hold the correct rule to be that a conveyance of land bounded on a highway, street, or alley carries with it the fee to the center thereof, subject to the easement of public way, provided the grantor at the time of conveyance owned to the center and there are no words in the deed showing a contrary intent, *whether the dedication of the highway, street, or alley has been accepted or not, and whether it has been opened or not.* [Emphasis added; see also *Minerva Partners, Ltd v First Passage, LLC*, 274 Mich App 207, 215-216; 731 NW2d 472 (2007).]

The same proposition was reiterated by our Supreme Court in *Shewchuck v City of Cheboygan*, 372 Mich 110, 114; 125 NW2d 273 (1963), wherein the Court stated:

The defendant city by its nonacceptance of the dedication and by nonuser is barred from claiming any rights in the disputed portion of the strip in question, and the case is remanded so that a suitable order may be issued accordingly, and, further, for such proceedings as are necessary to grant appellants' prayer for relief, namely, that *the whole strip be divided according to abutting footage on the strip*, among plaintiffs and defendants. [Emphasis added; quotation marks and ellipsis omitted.]

The rule reflected in *Field, Loud,* and *Shewchuck* holds true "unless something appears upon the plat, or in the terms of the conveyance, excluding the title from passing under a boundary so described." *Plumer v Johnston*, 63 Mich 165, 173; 29 NW 687 (1886), overruled in part on other grounds in *Loud*, 241 Mich 452.

Accordingly, on the strength of these authorities, the original purchasers of the lots now owned by the partnership, which were deeded to them by the URA back in 1890, held ownership or fee simple interests in Cottage Grove Avenue where it abutted their lots (lots 13 and 15), as the roadway was never accepted by a governmental entity or authority and no base fee arose.[2] Given that the shoreline abutted the other side of the roadway, as opposed to other parcels or lots, the ownership interests extended the full width of Cottage Grove Avenue. See *2000 Baum*

---

[2] It appears that the 1890 plat contained no language providing the URA with a reversionary interest in the platted public roads should the dedication not be accepted. And there is no indication that the 1890 deeds contained language retaining title in the URA to abutting roadways.

*Family Trust*, 488 Mich at 138-140 (recognizing not only lot-owner rights in the abutting roadway stretching between the lots and the waterway but also riparian rights); see also *Valoppi v Detroit Engineering & Machine Co*, 339 Mich 674, 678; 64 NW2d 884 (1954).

This brings us to the 1923 quitclaim deed that was executed and recorded 33 years after the plat was established and beyond a reasonable time for acceptance by a public entity or authority. Consistent with the partnership's theory and the recited authorities, and based on the existing record of deeds, the Ne-Ah-Ta-Wanta Resort Association did not hold title to Cottage Grove Avenue, such that it could convey the roadway to the four lot owners that had property abutting it; those lot owners effectively already held respective ownership interests in Cottage Grove Avenue.[3] This of course places into question the validity of the reservation of an easement contained in the 1923 deed, as a party cannot reserve an interest in property not owned by that party.

We note that the 1923 deed was a quitclaim and not a warranty deed. The grantor of a quitclaim deed warrants no title and conveys only that interest that he or she actually owns at the time of conveyance, which may be no interest at all. *Richards v Tibaldi*, 272 Mich App 522, 541; 726 NW2d 770 (2006). "A deed of quit claim and release, of the form in common use, shall be sufficient to pass all the estate which the grantor could lawfully convey by a deed of bargain and sale." MCL 565.3. The 1923 conveyance was made "for and in consideration of the sum of One Dollar and other good and valuable considerations to it in hand paid by the" grantees, which included the partnership's own predecessor in interest. We surmise that in 1923 there existed some uncertainty as to the ownership status of Cottage Grove Avenue, given that there had been no acceptance of this dedicated road, and that a quitclaim deed was employed by the Ne-Ah-Ta-Wanta Resort Association and the grantees to eliminate any possibility of future disputes over ownership.[4] This would explain the use of a quitclaim deed, as the Ne-Ah-Ta-Wanta Resort

---

[3] The Ne-Ah-Ta-Wanta Resort Association presents an argument under MCL 455.10, which is part of the Summer Resort and Park Associations Act (SRPAA), MCL 455.1 *et seq.* (see 1897 PA 230), pursuant to which the Association was purportedly incorporated. MCL 455.10 provides that the board of directors of an SRPAA corporate entity "shall have jurisdiction over the lands of the corporation and all streets, alleys, and highways passing through and over the same[.]" However, assuming the applicability of this provision, having *jurisdiction* over streets does not equate to having a *real property interest* in the streets that is subject to conveyance. The Ne-Ah-Ta-Wanta Resort Association additionally argues that the 1908 deed from Titus to the Association conveyed "lots and streets." However, the quote is taken out of context. The 1908 deed provided, "The property above described has heretofore been platted into lots and streets, by plat dedicated to the public . . . ." Moreover, there is no indication that previous deeds in the chain of title reflected conveyances of the roadways, making the 1908 deed just as susceptible to doubt as the 1923 deed even if the 1908 deed expressly reflected a conveyance of streets from Titus to the Association.

[4] Of course, it is also feasible that, given the many years that have passed and the age and legibility of the documentation, and considering that the 1923 deed itself was only discovered fortuitously in 2007, there may well have been some instrument providing ownership of Cottage Grove Avenue to the Ne-Ah-Ta-Wanta Resort Association prior to 1923.

Association was not warranting that it actually owned the road. If it did actually hold an ownership interest, the quitclaim deed conveyed it to the grantees, putting all concerns to rest.

We find it a bit disconcerting that the partnership, whose predecessor in interest benefited from the 1923 quitclaim deed either through an actual conveyance to her or through the attainment of some of peace of mind with the confirmation of ownership, now seeks to disavow the deed and its reservation of an easement. The 1923 deed, in our view, reflected an acknowledgment by the grantees of an easement for pedestrian travel to be enjoyed by the Ne-Ah-Ta-Wanta Resort Association and lot owners in the plat. As far as the grantees were concerned in 1923, the easement would be ongoing in light of the deed, and Cottage Grove Avenue and the walkway were indeed used for the years to come in a manner consistent with an easement. Principles of estoppel and waiver would seem to bar the partnership's attempt at this late date to challenge the existence of the easement. Had the Ne-Ah-Ta-Wanta Resort Association held title to Cottage Grove Avenue in 1923, the reserved easement would have been indisputably valid, circumventing the partnership's theory in this case. Regardless, preexisting ownership of Cottage Grove Avenue by the grantees of the 1923 deed and the lack of the Association's capacity to convey the roadway did not mean that no easement existed, quite the contrary.

Despite the fact that the partnership's predecessors held title to Cottage Grove Avenue free from any rights held by the *public at large* because the dedicated roadway was never publicly accepted, and even if the Ne-Ah-Ta-Wanta Resort Association lacked the capacity to convey the roadway under the 1923 deed, the Association and the owners of lots in the plat already held easement rights to use the roadway by virtue of simply purchasing property within the plat under deeds referencing the plat. A purchaser of lands within a recorded plat receives not only the interest described in a deed but also whatever rights are indicated from the plat. *Kirchen v Remenga*, 291 Mich 94, 104; 288 NW 344 (1939) ("The sale of lots with reference to a plat in which areas are designated as parks passes to the purchasers of the lots a common right to use such areas for park purposes."). In *Nelson v Roscommon Co Rd Comm'n*, 117 Mich App 125, 132; 323 NW2d 621 (1982), this Court explained:

> Defendant's last argument is that the other lot owners in the subdivision have inherent rights to use the streets and public areas dedicated in the recorded plat, and their rights were ignored because plaintiffs failed to join them in the litigation. Plaintiffs counter that since the street has never been open to public use, the other lot owners have no right to use it nor any interest in it such that they would have to be made part of this litigation.
>
> Plaintiff's contention that the other subdivision lot owners have no interest in the vacated street is incorrect. It is well-established that a purchaser of property in a recorded plat receives not only the interest as described in the deed but also whatever rights are indicated in the plat. A grantee of property in a platted subdivision acquires a private right entitling him to the use of the streets and ways laid down on the plat, regardless of whether there was a sufficient dedication and acceptance to create public rights. Therefore, whether or not the street in question was properly dedicated or accepted by Gerrish Township is irrelevant as to the interests of the property owners within the subdivision. The private rights of those

property owners to use the dedicated street cannot be extinguished by the township's failing to accept the street for public use. [Citations and quotation marks omitted.]

A grantee of property within a plat acquires a private right entitling him "to the use of the streets and ways laid down on the plat," regardless of whether there was a dedication and acceptance to create public rights. *Rindone v Corey Community Church*, 335 Mich 311, 317; 55 NW2d 844 (1952).

Accordingly, whether recognized under the 1923 deed or simply on the basis of the platted streets and purchase of lots referencing the plat, the Ne-Ah-Ta-Wanta Resort Association and plat lot owners held and hold easement rights over the walkway and the area that formed Cottage Grove Avenue. Furthermore, the easement survived the 1980 court judgment vacating Cottage Grove Avenue. The judgment and the vacation of the roadway was "[s]ubject to easements or restrictions, if any." And the judgment vested title to Cottage Grove Avenue in the partnership's predecessors "free and clear of all right and title which the County of Grand Traverse, Township of Peninsula, *or the public generally*, has or heretofore may have had, by reason of any survey, plat or dedication thereof." (Emphasis added.) This order simply did not vacate or terminate the private easement interests held by plaintiffs and plat lot owners.

We recognize that our analysis is more consistent with count III of plaintiffs' complaint upon which the circuit court granted summary disposition in favor of the partnership. However, as reflected above, the circuit court very astutely added the caveat that the order "shall not be construed as impairing any of the relief granted by the court in its order on count I." The relief granted by the circuit court was proper. Moreover, the order on count III was the final order in the case triggering our jurisdiction on the claim of appeal, MCR 7.203(A)(1), providing us the authority to reverse the order.

Affirmed. Having fully prevailed on appeal, plaintiffs are awarded taxable costs pursuant to MCR 7.219.


/s/ Michael J. Riordan
/s/ William B. Murphy
/s/ Mark T. Boonstra